04-1748-CBS

## AFFIDAVIT

I, Richard Davies, being duly sworn, state as follows:

1. I am a Special Agent, United States Bureau of Immigration and Customs Enforcement ("ICE"), formerly known as the Immigration and Naturalization Service, and have been so employed for approximately six years. I am presently assigned to the Boston, Massachusetts office of ICE. My responsibilities include the investigation of human smuggling, trafficking, and the use of false documents by illegal aliens to enter and remain in the United States.

2. This affidavit is submitted in support of an application for a criminal complaint charging Julio Quezada, a/k/a Watusi (hereinafter sometimes referred to as the "SUBJECT"), with knowingly forging, counterfeiting, altering, and falsely making nonimmigrant visas for entry into and as evidence of authorization to stay in the United States, in violation of 18 U.S.C. Sections 1546(a) and 2.

3. I base this affidavit on my own investigation and information I have received both from other law enforcement officers and from a cooperating witness (hereafter, "CW"). In submitting this affidavit, however, I have not included each and every fact known to me about the investigation, but

1

only those facts which I believe are sufficient to establish the requisite probable cause.

4. The CW has been a source of reliable information for ICE for more than one year. The CW has previously furnished information to ICE and to other law enforcement personnel that has resulted in arrests and federal convictions of traffickers in fraudulent identification documents and traffickers in controlled substances.

5. On October 1, 2003, I received information from the CW that a male individual from Guatemala known to the CW as "Guatuci" (phonetic) was supplying Guatemalan passports with fraudulent United States visas for $6,000.00 each. These United States visas were being used to gain illegal entry into the United States. As set forth below, it was later determined that the SUBJECT's correct name is Julio Quezada and that the correct alias for the SUBJECT is "Watusi". According to ICE records, the SUBJECT, whose date of birth is October 6, 1958, has made at least 30 entries into and departures from the United States since September 19, 1997.

6. On October 20, 2003, at approximately 3:34 p.m., at the request of this affiant, the CW placed a call from an undercover telephone to the SUBJECT at telephone number

(011) 502 332-5219, a number that the CW previously had provided as a contact number for the SUBJECT. The ensuing conversation, which took place in Spanish, was recorded. Among other things, an unidentified female told the CW that "Julio" was not home. The CW gave her an undercover telephone number to give to the SUBJECT, in order for the SUBJECT to return the CW's call. At approximately 3:45 p.m., a telephone call was received by the CW on that undercover cellular telephone from a male caller identifying himself as "Watusi". This conversation, too, was in Spanish and was recorded. In substance and among other things, the SUBJECT stated that, in return for $6,000.00, he would supply the CW with a Guatemalan passport with a U.S. visa. The SUBJECT stated that he would need two passport-sized photographs and a biographical description in order to create this document. The SUBJECT stated that he would either mail the completed documents to the United States or deliver them personally, if the CW paid for his airplane ticket. The SUBJECT stated that he currently transports people across the land border from Guatemala into Mexico, then takes them to the airport in Tapachula, Mexico, from which the persons fly to Mexico City, Mexico, and then on to New York, New York.

3

7. On October 22, 2003, at approximately 9:37 a.m., the CW received a telephone call on the undercover telephone number that had been provided to the SUBJECT. The ensuing conversation, which was in Spanish, was recorded. In substance and among other things, the SUBJECT identified himself and instructed that when the CW was ready to purchase the fraudulent United States visa and Guatemalan passport, the CW needed to send the necessary photographs and identifying information via Federal Express or United Parcel Service ("UPS") to 30 Avenida 25-19, Zona 5, Colonia La Babor, Guatemala City, Guatemala. The SUBJECT instructed the CW to send the money to "Julio Quezada" via Western Union.

8. On November 4, 2003, the CW, at my direction, placed a telephone call to the SUBJECT. The Spanish conversation was recorded. Among other things, the CW told the SUBJECT that he wanted to see samples of the SUBJECT's work before the CW paid any money, and the CW requested that the SUBJECT send such samples by fax. The SUBJECT agreed to do so.

9. The SUBJECT had not sent any fax as of November 7, 2003, so the CW, at my direction, called the SUBJECT again. The ensuing Spanish conversation was recorded. In substance

and among other things, the SUBJECT told the CW that the quality of faxed samples would not be good and suggested instead that he email the samples. The CW called the SUBJECT again a short while later to provide an undercover email address at which to receive the samples, and, later that day, an email was received at this undercover email address. I opened the email in Boston, Massachusetts. It was sent from email address "oquezada_sanchez@hotmail.com." The sender stated, in Spanish, that this email address belonged to his son. The subject line identified this email as "de watusi de guatemala," or, in English, "from watusi of/from guatemala." Attached to the email were two documents representing samples of the SUBJECT's work. The first attachment contained Guatemalan passport number 119403103, purportedly issued to Juan Jose Toruno Kopp with a date of birth of November 20, 1980. The second attachment contained a United States visa purportedly issued to Kopp, with that same date of birth, on June 21, 2000, with an expiration date of June 19, 2010. The visa foil number appearing on this document is 33892522. (A "foil number" is a number that the State Department uses to identify uniquely each genuine visa that it issues.) The individual shown on this document appears to be the same adult male depicted on

the Guatemalan passport. I have consulted with the U.S. State Department and have learned that the State Department did, in fact, issue a genuine visa bearing this foil number to an individual named Juan Jose Toruno Kopp on June 21, 2000, but Kopp's date of birth, as it appears on the State Department's copy of the genuine visa, is November 20, 1990 (i.e., ten years later than that appearing on the email version), and the photograph associated with the genuine visa depicts a young male child as opposed to the adult male depicted on the documents provided by the SUBJECT via the email.

    10. On December 2, 2003, at approximately 11:57 a.m., at the direction of this affiant, the CW placed another a telephone call to the SUBJECT at (011) 502 696-7361. The ensuing conversation, which took place in Spanish, was recorded. In substance and among other things, the SUBJECT instructed the CW to send $3,000.00 to initiate the purchase of a fraudulent Guatemalan passport and fraudulent U.S. visa. The SUBJECT directed that the money be sent via Western Union under the name Nelson Eduardo Ovando Esquivel. After the telephone call was completed, at the direction of this affiant, the CW sent the SUBJECT via Western Union $1,500.00 of government funds under the name Nelson Eduardo

Ovando Esquivel (the name the SUBJECT provided during the December 2, 2003 conversation) and $1,500.00 of government funds under the name Julio Quezada (the SUBJECT's true name, according to ICE records, and the name the SUBJECT provided during the October 22, 2003 conversation). The CW then placed another telephone call, at the direction of this affiant, to the SUBJECT at (011) 502 696-7361. The conversation, which took place in Spanish, was recorded. In substance and among other things, the CW provided the money transfer numbers to the SUBJECT. Western Union records confirmed that this money was received that same day in Guatemala.

11. On December 3, 2003, this affiant sent two pictures and fictitious biographical information from Massachusetts to Julio Quezada at 30 Avenida 25-19, Zona 5, Colonia La Babor, Guatemala City, Guatemala via UPS, consistent with the instructions the SUBJECT had given to the CW to provide passport-sized photographs for use in the fraudulent Guatemalan passport and fraudulent U.S. visa. UPS records show that this package was signed for on December 5, 2003 by J. Quezada.

12. On January 20, 2004, this affiant opened an email received into the undercover email account established for

this case. The email was from the same address as the email received on November 7, 2003. This email contained an attachment, which, when opened, revealed a fraudulent U.S. visa and a fraudulent Guatemalan passport. Notwithstanding the biographical information I had provided to the SUBJECT, both documents bore the name of Juan Jose Toruno Kopp, date of birth November 20, 1980, and the visa bore foil number 33892522, i.e., the same name and foil number appearing on the samples provided by the SUBJECT on November 7, 2003. The picture on the fraudulent U.S. visa and Guatemalan passport had been changed to the pictures that I sent to the SUBJECT on December 3, 2003.

13. On January 21, 2004, at the direction of this affiant and per the instructions from the SUBJECT, the CW sent $3,000.00 in government funds via Western Union from Massachusetts to the SUBJECT in Guatemala under the name Julio Quezada. This money was the other half of the payment that was initially sent on December 2, 2003. On that same day, at approximately 11:10 a.m., at the direction of this affiant, the CW contacted the SUBJECT at (011) 502 402-8634. The conversation, which took place in Spanish, was recorded. During the conversation, among other things, the CW provided the SUBJECT with the money transfer numbers. Western Union

records show that this money was received in Guatemala on that same day.

14. On January 23, 2004, this affiant received the Guatemalan passport with fraudulent United States visa that the SUBJECT mailed from Guatemala to the CW at an undercover address in Westboro, Massachusetts. (The package actually had been intercepted by Customs and Border Protection in Miami, Florida.) I have examined the documents, and it appears that the visa was made by taking a copy of the genuine visa bearing foil number 33892522, affixing one of the photographs that I provided, and using a date of birth consistent with the age of the person depicted, i.e., by changing as little as possible from the original document.

15. On March 29, 2004, this affiant directed the CW to send $3,000.00 in government funds from Massachusetts to the SUBJECT in Guatemala under the name "Julio Quezada" for the purchase of a second fraudulent U.S. visa and Guatemalan passport. The CW then called the SUBJECT and, during a conversation that took place in Spanish and which was recorded, provided the SUBJECT the Western Union money transfer numbers. Western Union records show that this money was retrieved in Guatemala on March 30, 2004.

16. On March 31, 2004, this affiant directed the CW to send photographs depicting a woman, together with fictitious biographical information, via UPS from Massachusetts to Julio Quezada at 30 Avenida 25-19, Zona 5, Colonia La Babor, Guatemala City, Guatemala. UPS records show that this package was delivered to Guatemala on April 1, 2004.

17. On May 11, 2004, this affiant opened an email received into the undercover email account established for this case. The email was from the same address as the email received on November 7, 2003. This email contained an attachment, which, when opened, revealed documents purporting to be a U.S. visa and Guatemalan passport. The pictures on these documents appear to be the same pictures as were sent to the SUBJECT on March 31, 2004. Due to the poor quality of the image received via email, it is not possible to make out either the name or the foil number, among other information, appearing on the purported visa.

18. Based on the foregoing, I believe there is probable cause to believe that Julio Quezada, a/k/a Watusi, has been engaged in, and continues to be engaged in, the crime of knowingly forging, counterfeiting, altering, and falsely making nonimmigrant visas for entry into and as

evidence of authorization to stay in the United States, in violation of 18 U.S.C. Sections 1546(a) and 2.

_____
RICHARD DAVIES
Special Agent, Bureau of
  Immigration and Customs
  Enforcement

Subscribed and sworn to before me this 2nd day of June, 2004

_____
CHARLES B. SWARTWOOD
United States Magistrate Judge